IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PUTZ FARMS, JOINT VENTURE, A JOINT VENTURE OF HERBERT PUTZ AND SIGNE PUTZ | § § § § | |
| v. | § § | CASE NO. 4:09-cv-355 JURY TRIAL REQUESTED |
| C. DOUGLAS DONLEY D/B/A C. DOUGLAS DONLEY CROP INSURANCE | § § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES PUTZ FARMS, JOINT VENTURE, A JOINT VENTURE OF HERBERT PUTZ AND SIGNE PUTZ, Plaintiff, complaining of C. DOUGLAS DONLEY D/B/A C. DOUGLAS DONLEY CROP INSURANCE, Defendant, and would respectfully show:

#### 1.   PARTIES

1.1   Plaintiff Putz Farms, JV is a joint venture of Herbert Putz and Signe Putz, who are individuals residing in Orange, Madison County, Virginia.  Plaintiff operates a farm in Delta County, Texas, which is the subject of this lawsuit.

1.2   Defendant C. Douglas Donley d/b/a C. Douglas Donley Crop Insurance is an individual residing at P. O. Box 129, Vinita, Craig County, Oklahoma, and with a business address of 201 South Wilson, Vinita, Craig County, Oklahoma, where he may be served with process.  Defendant is licensed as an insurance agent by the State of Texas and does business as an insurance agent in the State of Texas.

## 2.  JURISDICTION

2.1   This Court has jurisdiction over this case under 28 U.S.C. § 1332(a)(1) because the Plaintiff and the Defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

## 3.  VENUE

3.1   Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because the events or omissions giving rise to the claims alleged herein occurred in Delta County, Texas, which is within the Sherman Division of the Eastern District of Texas.

## 4.  FACTS

4.1   At all times relevant to this action, Plaintiff has operated a farm consisting of approximately 6,500 acres located in Delta County, Texas.  On that farm Plaintiff grows a number of crops, including wheat.  Beginning in about 2002, Plaintiff became a client of Defendant and utilized Defendant's services as a crop insurance agent.  Specifically, Plaintiff sought to obtain crop insurance for crops raised on its Delta County farm and purchased such insurance through Defendant, who at all relevant times was a person engaged in the business of insurance in the State of Texas.  For each of the years 2002-2006, Defendant recommended that Plaintiff purchase crop insurance from particular companies.  Plaintiff accepted Defendant's recommendations and Defendant assisted Plaintiff in applying for crop insurance coverage from the companies he had recommended.  In each of those years, Defendant collected commissions from the crop insurance carriers that sold the crop insurance to Plaintiff.  By 2006, Plaintiff had developed a confidential and special relationship with Defendant, such that Defendant became thoroughly aware of the crop insurance needs and requirements of Plaintiff, and Plaintiff came to rely on and trust Defendant to procure crop insurance consistent with such needs and requirements.

4.2     For the crop year 2006, Defendant placed the crop insurance coverage for Plaintiff with NAU Country Insurance Company ("NAU"), for which Defendant was an authorized agent. When the time came for Plaintiff to obtain crop insurance coverage for 2007, Defendant recommended that Plaintiff apply for crop insurance coverage with Great American Insurance Company ("GAIC"), for which Defendant was also an authorized agent. Plaintiff relied on Defendant's recommendation and requested that Defendant submit an application to GAIC for crop insurance coverage for 2007, which Defendant agreed to do.

4.3     Defendant submitted Plaintiff's application for crop insurance to GAIC on or about September 29, 2006. At that time, it was well known to Defendant that Plaintiff, for insurance purposes, operated the Delta County farm as a series of optional units, with each unit being a separately identified tract, rather than as one basic unit. In fact, Defendant had been instrumental in assisting Plaintiff in establishing the optional unit structure when Plaintiff first became his client. Under optional unit coverage, as distinguished from basic unit coverage, any loss would be determined on each individual unit, rather than averaging production and losses across the entire farm. Defendant was also aware that Plaintiff intended to operate under the same system of optional units for 2007, and that it desired to purchase a crop insurance policy that would provide coverage for that optional unit system, equivalent to the coverage it had obtained through Defendant in previous years.

4.4     In connection with its application for crop insurance coverage through GAIC, on or about July 17, 2006, Plaintiff forwarded to Defendant its 2006 production and yield reports for the optional units on the Delta County farm. In previous years, as part of the service Defendant provided to Plaintiff, Defendant had received such production and yield reports from Plaintiff and had forwarded the information, in the proper format, to the applicable insurance carrier. Based on that course of dealing with Defendant, Plaintiff expected and relied on Defendant to

forward the production and yield reports to GAIC, as part of the process of applying for coverage for the 2007 crop year. Defendant, however, failed to forward Plaintiff's 2006 production and yield reports to GAIC in a timely manner. Defendant also failed to notify Plaintiff that the 2006 production and yield reports had not been submitted to GAIC, and/or that additional information was necessary to complete the application process for the type of crop insurance coverage Plaintiff needed and desired. Defendant misrepresented to Plaintiff that all necessary steps had been taken to procure a crop insurance policy from GAIC providing coverage to Plaintiff under the optional unit structure, equivalent to the coverage Defendant had procured for Plaintiff in preceding years.

  4.5 Defendant, through the special relationship developed with Plaintiff in the several years preceding the 2007 crop year, induced Plaintiff to rely on Defendant to obtain the insurance coverage Plaintiff desired, including optional unit coverage. Plaintiff reasonably, but to its detriment, assumed that the crop insurance coverage procured by Defendant for Plaintiff, through GAIC, provided coverage on an optional unit basis, and thus had no reason to believe that GAIC had not timely received Plaintiff's 2006 production and yield reports, that GAIC would require additional information, or that optional unit coverage would not be provided by the policy issued by GAIC.

  4.6 GAIC issued to Plaintiff Policy Number 2007-TX-801-951427, which provided coverage for the 2007 wheat crop on Plaintiff's Delta County farm. Plaintiff was initially advised by GAIC that such coverage included coverage under the optional unit structure, and specifically that it included coverage for 13 optional units, units 101-113.

  4.7 In early April 2007, frost badly damaged the wheat crop planted on Plaintiff's Delta County farm. Plaintiff gave notice of the loss to GAIC. Adjusters acting on behalf of

GAIC inspected the Delta County farm and appraised Plaintiff's wheat crop loss in April 2007 and in August 2007.

4.8   On or about October 17, 2007, Plaintiff was first notified by GAIC that its 2007 wheat claim was being denied.  In a subsequent letter, dated November 6, 2007, GAIC notified Plaintiff that the 2007 wheat claim had been finalized and was being denied because a proper 2006 production and yield report had not been filed with GAIC before the applicable deadline, and that therefore the unit structure for the 2007 crop insurance was being changed to reflect one basic unit for the crop year.  Further, in that letter GAIC advised Plaintiff that, considering the Delta County farm as one basic unit, the 2007 production exceeded the guaranteed production, and thus GAIC considered there to be no loss.  Had the claim been considered under optional unit coverage, however, Plaintiff would have sustained a covered loss and would have been entitled to benefits under the GAIC crop insurance policy.

## 5.   CAUSES OF ACTION

5.1   As set forth below, Plaintiff asserts the following causes of action against Defendant:

    a.   negligence, negligent misrepresentation and negligent procurement;

    b.   violations of the Texas Deceptive Trade Practices Act and the Texas Insurance Code;

    c.   breach of contract; and

    d.   breach of fiduciary duty.

## 6.   NEGLIGENCE, NEGLIGENT MISREPRESENTATION AND NEGLIGENT PROCUREMENT

6.1   **Negligence.**  Plaintiff contends that its injuries and damages were proximately caused by the negligent acts and/or omissions of Defendant, in that Defendant negligently failed to submit to GAIC, in a timely manner, the 2006 production and yield reports furnished to

Defendant by Plaintiff. Alternatively, Plaintiff contends that Defendant, as part of his service to Plaintiff as an insurance agent, undertook to gather and submit all information necessary to procure crop insurance from GAIC for Plaintiff's 2007 wheat crop, under the same optional unit structure that had been employed by Plaintiff for the preceding several years. Defendant, however, negligently failed to furnish the necessary production and yield reports to GAIC, which resulted in GAIC's denial of coverage under the optional unit structure for the loss of Plaintiff's wheat crop. Defendant's negligence proximately caused Plaintiff's injuries and damages, described below.

    6.2    Plaintiff would show that Defendant was negligent in that he:

    a.    failed to procure the proper insurance coverage for Plaintiff;

    b.    failed to act as a reasonable and prudent agent would have under the same or similar circumstances;

    c.    failed to ensure that Plaintiff would have proper insurance coverage afforded for losses under the optional unit structure;

    d.    failed to disclose that the GAIC policy would not provide coverage for losses under the optional unit structure;

    e.    allowed the Plaintiff to believe that the GAIC policy afforded insurance coverage for losses under the optional unit structure;

    f.    failed to complete in a full and accurate manner the insurance application process and to convey to GAIC all information necessary to protect the interests of Plaintiff and to procure the type of coverage needed and desired by Plaintiff; and

    g.    failed to advise Plaintiff that additional information was needed to submit to GAIC in order to obtain the type of coverage needed and desired by Plaintiff.

    6.3    **Negligent Misrepresentation.** Plaintiff contends that its injuries and damages were proximately caused by Defendant's negligent misrepresentation that all necessary information, including 2006 production and yield reports, had been submitted to GAIC in order to obtain crop insurance for Defendant's 2007 wheat crop, under the optional unit structure

employed by Plaintiff for the preceding several years. In applying for coverage from GAIC for the 2007 crop year, Plaintiff followed its customary practice of providing production and yield information to Defendant, with the reasonable expectation that Defendant would follow his customary practice and submit such information to GAIC, as the prospective insurance carrier. Defendant negligently failed to do so, however, which ultimately resulted in GAIC's denial of Plaintiff's claim, proximately causing Plaintiff's injuries and damages.

6.4  **Negligent Procurement.**  Plaintiff contends that its injuries and damages were proximately caused by Defendant's negligent procurement of crop insurance coverage for Plaintiff that did not include coverage for the optional unit structure, as needed and desired by Plaintiff. Defendant failed to use reasonable diligence in attempting to place the requested insurance and to inform Plaintiff, his client, that he failed to do so, or was unable to do so. Defendant induced Plaintiff to rely on his performance of the undertaking to procure insurance with coverage for the optional unit structure, and Plaintiff reasonably, but to its detriment, assumed that it was insured with such coverage, and against the risk that the individual optional units would, due to frost damage, fail to yield their respective anticipated volumes of wheat. Further, due to Defendant's negligence, Plaintiff was led wrongly to believe that the policy issued by GAIC provided coverage under the optional unit structure.

6.5  Plaintiff would further show that it was not until at least October 17, 2007, that Plaintiff had knowledge of facts, which through reasonable diligence, would lead to the discovery of Defendant's negligent conduct, including his failure to furnish the production and yield information to GAIC, and the resulting injury to Plaintiff. Accordingly, Plaintiff invokes the discovery rule, as it applies to Plaintiff's causes of action for negligence, negligent misrepresentation and negligent procurement. Plaintiff would show that the injury was inherently undiscoverable, because GAIC, until at least October 17, 2007, had acted as if

coverage under the optional unit structure was provided under the GAIC policy. In this regard, Plaintiff would show that GAIC sent schedules of insurance and premium billings to Plaintiff, on several occasions prior to October 17, 2007, indicating that the policy issued to Plaintiff provided coverage under the optional unit structure.

### 7.   TEXAS DECEPTIVE TRADE PRACTICES ACT AND TEXAS INSURANCE CODE

7.1   **Texas Deceptive Trade Practices Act.**  Plaintiff contends that Defendant's acts and/or omissions, described above, constitute violations of § 17.46, TEX.BUS.&COM.CODE, the Texas Deceptive Trade Practices Act, entitling Plaintiff to assert this cause of action pursuant to § 17.50, TEX.BUS.&COM.CODE. Specifically, Defendant engaged in false, misleading or deceptive acts or practices, including the following:

a.   representing that his services had characteristics or benefits that they did not have, in violation of § 17.46(b)(5), TEX.BUS.&COM.CODE;

b.   representing that his services were of a particular standard, quality or grade, when they were of another, in violation of § 17.46(b)(7), TEX.BUS.&COM.CODE;

c.   representing that an agreement conferred or involved rights, remedies or obligations which it did not have or involve, in violation of § 17.46(b)(12), TEX.BUS.&COM.CODE; and

d.   failing to disclose information concerning his services which was known at the time of the transaction, and such failure to disclose such information was intended to induce Plaintiff into a transaction into which Plaintiff would not have entered had the information been disclosed, in violation of § 17.46(b)(24), TEX.BUS.&COM.CODE.

7.2   **Texas Insurance Code.**  Plaintiff further contends that Defendant violated §§ 541.051 and 541.061, TEX.INS.CODE, by engaging in unfair or deceptive acts or practices, and such violations of the Texas Insurance Code are also violations of the Texas Deceptive Trade

Practices Act, under § 17.50(a)(B)(4), TEX.BUS.&COM.CODE. Specifically, Plaintiff contends that Defendant:

   a.  misrepresented the terms of the GAIC policy or the benefits or advantages promised by the policy;

   b.  made untrue statements of material fact;

   c.  failed to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; and/or

   d.  made a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact.

7.3   Further, Plaintiff would show that Defendant's acts were committed knowingly, within the meaning of § 17.50(a)(B)(1), TEX.BUS.&COM.CODE, and § 541.152(b), TEX.INS. CODE, which entitles Plaintiff to recover additional damages.

7.4   Plaintiff would show that it was no earlier than October 17, 2007, that Plaintiff discovered or, by the exercise of reasonable diligence, should have discovered that Defendant had engaged in such unfair or deceptive acts or practices.

## 8.   BREACH OF CONTRACT

8.1   Plaintiff contends that Defendant, in failing to procure the type of insurance coverage needed and desired by Plaintiff, breached his oral contract with Plaintiff. Specifically, Plaintiff contends that Defendant recommended that Plaintiff seek crop insurance coverage from GAIC for the 2007 crop year, through Defendant's insurance agency, knowing that, as consideration, Defendant would receive a commission for placing such coverage with GAIC. Based on its course of prior dealings with Defendant, Plaintiff agreed to apply for and purchase crop insurance from GAIC, through Defendant's agency, with the reasonable expectation that Defendant would take whatever action was necessary to procure the type of insurance coverage that Plaintiff needed and desired, and Defendant agreed to obtain such coverage for Plaintiff.

Defendant breached this contract, however, by failing to furnish to GAIC the necessary information to obtain the crop insurance coverage needed and desired by Plaintiff, resulting in Plaintiff's injuries and damages as set forth below.

### 9. BREACH OF FIDUCIARY DUTY

9.1    Plaintiff contends that Defendant breached his fiduciary duty to Plaintiff by failing to procure the type of crop insurance Plaintiff needed and desired.  Plaintiff would show that there was a special relationship of trust and confidence that existed between Plaintiff and Defendant, prior to and apart from Plaintiff's efforts to obtain crop insurance for the 2007 crop year and the crop insurance policy issued by GAIC for 2007.  Because of this informal fiduciary relationship between Plaintiff and Defendant, Plaintiff was entitled to rely on Defendant to act consistently with their previous and customary course of dealing, and to furnish to GAIC, as the prospective insurance carrier, all information submitted to Defendant by Plaintiff, and to request from Plaintiff any additional information necessary to procure the type of insurance coverage needed and desired by Plaintiff.  Defendant's failure to provide the production and yield information to GAIC, or alternatively Defendant's failure to obtain from Plaintiff the necessary information to submit to GAIC, was the proximate and/or producing cause of Plaintiff's damages, as set forth below.

### 10. DAMAGES

10.1   Plaintiff alleges that as a direct and proximate result of the conduct of Defendant as set forth above, Plaintiff is entitled to recover damages for the crop loss that would have been payable by GAIC, had GAIC not denied optional unit coverage to Plaintiff, in at least the sum of $223,719.44.  In addition, as a direct and proximate result of Defendant's conduct, Plaintiff lost its eligibility for supplemental compensation payable under the United States Department of Agriculture/Risk Management Agency's Disaster Payment Program, which Plaintiff believes

would have amounted to at least $73,827.42. Further, as a direct and proximate result of Defendant's conduct, Plaintiff was forced to incur expenses associated with the arbitration of its claim against GAIC, which expenses are continuing to accrue. Consequently, Plaintiff's economic damages total in excess of $300,000.00.

10.2   Plaintiff also seeks to recover reasonable attorneys' fees and expenses, which presently amount to the sum of at least $12,000.00. Plaintiff will incur additional attorneys' fees as this litigation progresses.

10.3   Further, Plaintiff is entitled to recover additional damages under § 17.50(b)(1), TEX.BUS.&COM.CODE, and § 541.152(b), TEX.INS.CODE.

## 11.   PRAYER

11.1   Wherefore, Plaintiff prays that Defendant be cited to appear and answer, and that on final trial, the Court render judgment in favor of Plaintiff, consisting of all damages allowed by law, both actual and additional, reasonable attorneys' fees, pre-judgment and post-judgment interest, costs of court, and for such other and further relief, general and special, at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

*Paul Gilliam*

PAUL GILLIAM
State Bar No. 07938700
100 East Ferguson St., Suite 500
Tyler, Texas  75702
Telephone:   (903) 597-3301
Facsimile:    (903) 597-2413
paulg@rameyflock.com

**LEAD ATTORNEY FOR PLAINTIFF**

**OF COUNSEL:**
RAMEY & FLOCK, PC
A Professional Corporation
100 East Ferguson St., Suite 500
Tyler, Texas  75702
Telephone:    (903) 597-3301
Facsimile:     (903) 597-2413