IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PUTZ FARMS, JOINT VENTURE, A JOINT VENTURE OF HERBERT PUTZ AND SIGNE PUTZ | § § § § | |
| v. | § § | CASE NO. 4:09-cv-355 JURY TRIAL REQUESTED |
| C. DOUGLAS DONLEY D/B/A C. DOUGLAS DONLEY CROP INSURANCE | § § | |

## JOINT REPORT TO THE COURT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff PUTZ FARMS, JOINT VENTURE, A JOINT VENTURE OF HERBERT PUTZ AND SIGNE PUTZ, and Defendant C. DOUGLAS DONLEY D/B/A C. DOUGLAS DONLEY CROP INSURANCE, submit this Joint Report to the Court, in accordance with the Court's Order to Conduct Rule 26(f) Conference of August 24, 2009.

1. A factual and legal description of the case which also sets forth the elements of each cause of action and each defense.

**RESPONSE**:

    A.    **PLAINTIFF'S FACTUAL CONTENTIONS**

Plaintiff Putz Farms operates a farm consisting of approximately 6,500 acres located in Delta County, Texas, on which it grows wheat and other crops. Beginning in about 2002, Plaintiff became a client of Defendant Douglas Donley, who was engaged in the business of insurance in the State of Texas. For each of the years 2002-2006, Plaintiff purchased crop insurance through Defendant. Plaintiff contends that, by 2006, Defendant had become aware of the crop insurance needs and requirements of Plaintiff and Plaintiff came to rely on Defendant to procure suitable crop insurance.

For the crop year 2006, Defendant placed Plaintiff's crop insurance coverage with NAU Country Insurance Company ("NAU"). Plaintiff asserts that, when the time came for Plaintiff to obtain crop insurance coverage for 2007, Defendant recommended that such coverage be placed with Great American Insurance Company ("GAIC"). Plaintiff requested that Defendant submit an application to GAIC for crop insurance coverage for 2007, and Defendant submitted such an application on or about September 29, 2006. At that time, Plaintiff contends, Defendant was aware that, for crop insurance purposes,

Plaintiff operated the Delta County farm as a series of optional units, with each unit being a separately identified tract, rather than as one basic unit. Defendant had assisted Plaintiff in establishing the optional unit structure when Plaintiff first became Defendant's client. Under optional unit coverage, as distinguished from basic unit coverage, any loss would be determined on each individual unit, rather than averaging production and losses across the entire farm. Plaintiff contends that Defendant was aware that Plaintiff desired to purchase a crop insurance policy for 2007 that would provide coverage for such an optional unit system and that would be equivalent to the coverage it had obtained through Defendant in previous years.

On or about July 17, 2006, Plaintiff forwarded to Defendant its 2006 production and yield reports for the optional units on the Delta County farm. Plaintiff contends that, based on its course of dealing with Defendant, Plaintiff relied on Defendant to forward the production and yield reports to GAIC, as part of the process of applying for coverage for the 2007 crop year. Plaintiff further contends that Defendant failed to forward Plaintiff's 2006 production and yield reports to GAIC in a timely manner, failed to notify Plaintiff that such reports had not been submitted to GAIC, and failed to notify Plaintiff that additional information was necessary to complete the application process for the type of crop insurance coverage Plaintiff desired. Plaintiff contends that Defendant misrepresented to Plaintiff that all necessary steps had been taken to procure from GAIC a suitable crop insurance policy that would provide coverage under the optional unit structure, equivalent to the coverage Defendant had procured for Plaintiff in preceding years.

In addition, Plaintiff contends that Defendant, through the special relationship developed with Plaintiff in previous years, induced Plaintiff to rely on Defendant to obtain the insurance coverage, including optional unit coverage, that Plaintiff desired for the 2007 crop year. Plaintiff contends that, to its detriment, it relied on Defendant to procure coverage from GAIC on an optional unit basis, and had no reason to believe that GAIC had not timely received the 2006 production and yield reports, that GAIC would require additional information, or that optional unit coverage would not be provided by the policy issued by GAIC.

GAIC issued a crop insurance policy for Plaintiff's 2007 wheat crop. Plaintiff asserts that it was initially advised by GAIC that such coverage included coverage under the optional unit structure. In April 2007, frost badly damaged Plaintiff's wheat crop. Plaintiff gave notice of the loss to GAIC, which then appraised the wheat crop loss.

On or about October 17, 2007, Plaintiff was first notified by GAIC that its 2007 wheat claim was being denied. In a letter dated November 6, 2007, GAIC notified Plaintiff that the 2007 wheat claim had been finalized and was being denied because a proper 2006 production and yield report had not been filed with GAIC before the applicable deadline, and that therefore the unit structure for the 2007 crop insurance was being changed to reflect one basic unit for the crop year. GAIC also advised Plaintiff that, considering the Delta County farm as one basic unit, the 2007 production exceeded the guaranteed production, and thus GAIC considered there to be no loss. Plaintiff contends that, had the claim been considered under optional unit coverage, Plaintiff would have sustained a

covered loss and would have been entitled to benefits under the GAIC crop insurance policy.

### B. PLAINTIFF'S POSITION REGARDING ELEMENTS OF PLAINTIFF'S CAUSES OF ACTION

#### (1) NEGLIGENCE

The elements of Plaintiff's claim for negligence are:

a. that Defendant owed a legal duty to Plaintiff to exercise ordinary care in the procurement of crop insurance coverage for Plaintiff;

b. that Defendant breached that duty; and

c. that Plaintiff sustained damages proximately resulting from the breach.

#### (2) NEGLIGENT MISREPRESENTATION

The elements of Plaintiff's claim for negligent misrepresentation are:

a. that Defendant made a representation to Plaintiff in the course of procuring crop insurance coverage for Plaintiff, a transaction in which Defendant had a pecuniary interest;

b. that such representation contained false information for the guidance of Plaintiff in its business;

c. that Defendant did not exercise reasonable care or confidence in obtaining or communicating the information;

d. that Plaintiff justifiably relied on the representation; and

e. that Plaintiff suffered damages as a proximate result of Defendant's representation.

#### (3) NEGLIGENT PROCUREMENT

The elements of Plaintiff's cause of action for negligent procurement are:

a. that Defendant induced Plaintiff to rely on his performance of the undertaking to procure insurance;

b. that Defendant did not exercise reasonable care or competence in the performance of the undertaking to procure the insurance for Plaintiff;

c. that Plaintiff reasonably, but to its detriment, assumed that it was insured against the risks that caused its loss; and

d.     that Plaintiff suffered damages as a proximate result of Defendant's negligence.

### (4) VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

The elements of Plaintiff's claim under the Texas Deceptive Trade Practices Act are:

a.     that Defendant represented that his services had characteristics or benefits that they did not have, or that Defendant represented that his services were of a particular standard, quality or grade, when they were of another, or that Defendant represented that the insurance policy issued by GAIC conferred or involved rights, remedies or obligations which it did not have or involve, and/or that Defendant failed to disclose information concerning his services which was known at the time of the transactions, and such failure to disclose such information was intended to induce Plaintiff into a transaction into which Plaintiff would not have entered had the information been disclosed;

b.     that Plaintiff relied to its detriment on such representations or failure by Defendant; and

c.     that Defendant's conduct was the producing cause of Plaintiff's damages.

### (5) VIOLATION OF THE TEXAS INSURANCE CODE

The elements of Plaintiff's cause of action under the Texas Insurance Code are:

a.     that Defendant misrepresented the terms of the GAIC policy or the benefits or advantages promised by the policy, or made untrue statements of material fact, or failed to state a material fact necessary to make other statements Defendant made not misleading, considering the circumstances under which the statements were made, and/or made a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

b.     that Plaintiff relied on such conduct to its detriment; and

c.     that Defendant's conduct was a producing cause of Plaintiff's damages.

### (6) BREACH OF CONTRACT

The elements of Plaintiff's cause of action for breach of contract are:

a.     that Plaintiff and Defendant reached an agreement;

    b.    that as part of the agreement, in exchange for a commission on the premium payments, Defendant agreed to suggest and procure suitable insurance for Plaintiff;

    c.    that Defendant breached the agreement; and

    d.    that Plaintiff was damaged as a result of the breach.

### (7)   BREACH OF FIDUCIARY DUTY

The elements of Plaintiff's cause of action for breach of fiduciary duty are:

    a.    that there existed an informal fiduciary relationship, arising out of a special relationship of trust and confidence that existed prior to and apart from the procurement of the GAIC crop insurance policy;

    b.    that this relationship resulted in a fiduciary duty on the part of Defendant;

    c.    that Defendant breached that fiduciary duty; and

    d.    that Plaintiff sustained damages as a proximate result of such breach.

### C.   DEFENDANT'S FACTUAL CONTENTIONS

Donley was the agent for the Plaintiff's crop insurance policies for approximately six years, during which the insurers on the risk changed due to Plaintiff's dissatisfaction with each insurer's performance or frequent disputes over production and losses. In 2007, the Plaintiff chose to be insured by Farmer's Crop Insurance, which was later acquired by Great American Insurance Company (collectively "GAIC"). Plaintiff's insurer in 2006 had been NAU Country Insurance Company ("NAU"). Putz did not want to place coverage with NAU because he was involved in an arbitration/dispute with NAU over a claimed 2006 wheat crop loss.

The 2006 dispute is critical to this case because (1) the 2006 production had not been determined by arbitration when the GAIC policy was applied for and issued and (2) it was the Plaintiff's failure to provide 2006 production values that resulted in the Plaintiff's crop being treated as a basic unit. After the arbitration, neither the Plaintiff nor NAU provided the 2006 production figures to either GAIC or Donley. Donley was not involved in that arbitration in any way and was under no duty, factually or legally, to obtain those final production figures from the arbitration and provide them to either GAIC or the United States Department of Agriculture Risk Management Agency. That responsibility rested with the Plaintiff or, in the alternative, NAU.

It is clear that, under the federal crop insurance program, it is the insured that is "solely responsible for timely submission of the production report to the agent." If production is not reported, an "assigned yield" is allocated to the production (which is 75% of the transmitted yield). The effect of this under the National Crop Insurance Program is to convert coverage from optional unit coverage (which is what Putz claims he should have had) to basic unit coverage (which is what Putz ended up with).

Donley cannot be found liable for the Plaintiff's inability to produce production figures or, in the alternative, the Plaintiff's negligent failure to report production. Donley timely sent to Putz the schedule of insurance, which contains information as to each then-existing unit. Putz was to enter the production in the actual unit spaces and return the information to Donley. Putz never did this. Donley, however, did properly and timely submit the information to the carrier that Putz had provided to him. When the APH forms were generated, they necessarily showed "zero" production with regard to the units. Putz received these forms and never questioned the absence of reported production. Indeed, no production figures could be established because the production figures were, as mentioned above, the subject of the NAU arbitration regarding the 2006 crop year. In the alternative, Putz could have provided production figures and negligently failed to do so. This effectively changed the nature of the GAIC coverage from optional unit (which had been requested when application for the policy had been submitted) to basic unit coverage (the coverage GAIC extended).

Aside from the Plaintiff's failure to report the production and the unavailability of final production values until after the resolution of the NAU arbitration, Putz also, by his own conduct, caused the denial of his claim by GAIC. First, Putz had designated certain wheat in 2007 as uninsured "silage." During the crop year, that wheat became worthless as silage due to moisture/drying issues, and Putz cut the wheat for harvest. This had the effect of turning that harvested wheat into "production." That production increased Putz's production and would have resulted in a "commingling" of production and treatment as one basic unit in any event. Second, Putz's conduct in relation to unit 103 and a second appraisal based upon a late harvest of the wheat evinces the Plaintiff's failure to mitigate damages, the Plaintiff's claim of damages in excess of actual damages, and/or the Plaintiff's negligent diminution of its own claim.

### D. DEFENDANT'S POSITION REGARDING ELEMENTS OF DEFENDANT'S DEFENSES

1. The Plaintiff has failed to state a claim or claims upon which relief can be granted.

2. The Plaintiff's negligence, negligent misrepresentation, negligence procurement, Texas Deceptive Trade Practices Act, and Texas Insurance Code claims are barred by the applicable statutes of limitation.

3. Venue is not properly laid in this court.

4. Venue should be transferred pursuant to 28 U.S.C. § 1404.

5. The venue provisions of the Texas Deceptive Trade Practices Act are pre-empted by federal statute.

6. The Plaintiff's claimed damages are the result of acts of third parties over which or whom the Defendant exercises, or exercised, no control.

7. The Plaintiff's claimed damages are the result of its own negligence or misconduct or the negligence or misconduct of its agents or employees.

    8.      The Plaintiff's claimed damages are solely the result of the Plaintiff's conduct.

    9.      The Plaintiff has engaged in a course of misleading conduct that bars recovery.

    10.    Laches.

    11.    Waiver.

    12.    Even if the Defendant was negligent or breached any alleged contract, which alleged negligence or breach are both expressly denied, such negligence or breach was not the proximate cause of the Plaintiff's alleged damage.

    13.    Even if the entirety of the Plaintiff's allegations are taken as true, the Plaintiff is not entitled to the relief requested.

    14.    The Plaintiff's claimed damages were not proximately caused by the Defendant.

    15.    The Plaintiff may have failed to mitigate the claimed damages.

    16.    Plaintiff's allegations may be based upon an incorrect choice-of-law analysis.

    17.    Plaintiff's claims under the Texas Deceptive Trade Practices Act must be abated pursuant to § 17.505, Tex. Bus. & Com. Code.

    18.    Defendant reserves his right to request mediation pursuant to § 17.5051, Tex. Bus. & Com. Code.

    19.    Defendant specifically denies having committed any wrongdoing under the Insurance Code, but to the extent he may be deemed to have done so, his actions constituted a bona fide error.

2.    The date the Rule 26(f) conference was held, the names of those persons who were in attendance and the parties they represented.

**RESPONSE:**

    The Rule 26(f) conference was held on September 16, 2009. Participating in the conference were Paul Gilliam, counsel for Plaintiff, and Bruce A. McKenna, counsel for Defendant.

3.    A list of any cases that are related to this case and that are pending in any state or federal court with the case numbers and court along with an explanation of the status of those cases.

**RESPONSE:**

    The parties are not aware of any pending court cases related to this case. There is a pending arbitration, set for hearing on December 8, 2009, in Matter No. 0027-0414, in

the State of Texas, County of Lubbock, Office of Dispute Resolution, Putz Farms Joint Venture, Claimant, and Great American Insurance Co., Respondent. This matter involves the claims of Putz Farms for the 2007 wheat crop loss.

4. An agreed discovery/case management plan, if agreement can be reached, which will be used by the court to prepare a Scheduling Order.

**RESPONSE:**

Attached as Exhibit "A" is a proposed Scheduling Order, to which Plaintiff and Defendant agree.

5. A suggested date for the Final Pretrial Conference (see enclosed list of the court's available Final Pretrial Conference dates) at which time the trial will be scheduled.

**RESPONSE:**

The parties propose that the Final Pretrial Conference be held on July 6, 2010.

6. The expected length of trial.

**RESPONSE:**

The parties anticipate that the trial of this case, including jury selection, will take 3-4 days.

7. Whether the parties jointly agree to trial before a magistrate judge.

**RESPONSE:**

The parties have not reached such an agreement at this time.

8. Whether a jury demand has been made.

**RESPONSE**:

Yes.

9. *__Whether any party requests a scheduling conference with the court__.*

**RESPONSE:**

No.

Respectfully submitted,

**RAMEY & FLOCK, P.C.**


/s/ Paul Gilliam
PAUL GILLIAM
Texas State Bar No. 07938700
100 East Ferguson St., Suite 500
Tyler, Texas  75702
Telephone:     (903) 597-3301
Facsimile:      (903) 597-2413
paulg@rameyflock.com

**LEAD ATTORNEY FOR PLAINTIFF**


**GLENDENING, MCKENNA PRESCOTT
    & ROBERTSON**


/s/ Bruce A. McKenna
BRUCE A. McKENNA
Oklahoma State Bar No. 6021
10108 E. 79th Street
Tulsa, Oklahoma  74133
Telephone:     (918) 494-7037
Facsimile:      (918) 494-9907
bmckenna@gmpoklaw.com

**LEAD ATTORNEY FOR DEFENDANT**